Our next case for argument is 22-1106, Regents of the University of California v. Satco Products. Ms. Hayes, please proceed. Thank you, your honors. May it please the court. In this case, the board erred in three significant ways. First, the board erred when it construed lead frames so broadly that it does not require a lead that acts as a frame. Second, the board erred because substantial evidence does not support the board's obviousness conclusions. And third, the board erred in its findings relating to claims 13 and 26 of the 916 patent. I want to start first with lead frame. The board's construction of lead frame, that it is merely a support structure for providing an interface to a semiconductor die, is impermissibly broad because it strays from the claim language itself, the specification, and the prosecution history. So first, considering the claim language itself. We're all in agreement that lead frame, as that term is used in this patent, includes the leads and the transparent plate. Is that right? That's correct. Okay. So why can't it be the transparent plate portion of the quote-unquote lead frame that provides the support to the chip? So here, the understanding of a person of skill in the art is that the metallic leads also need to provide the structural support for the entire LED package. So the lead itself provides the electrical interface from the package, the LED package, to the components that are outside of the package. And in order to do that, the leads must have some sort of structural framing capability. It can't just be that- Just assuming that lead frame is a technical term that's always been understood, in which the lead frame itself is providing support to the chip, why isn't it also true that the lead frame here is also likewise providing support to the chip when a particular element of the lead frame is providing that support, i.e., the transparent plate? So in all examples- You know, in this situation, your patent has created a new kind of lead frame. Correct. Perhaps never seen before. It has leads, and then it has this other thing called the transparent plate. So I guess that's why I'm asking, in this new world, with this new thing, that's still called a lead frame, why can't that lead frame, but the transparent plate portion, provide the support that you're talking about? The transparent plate never provides the support by itself. It always does it in combination with the lead of the lead frame. And where does the patent say that? The patent doesn't expressly say that, but it's implied when you look at each of the examples of the inventive lead frame. So the figures themselves, either, there are two primary embodiments that are disclosed. One where the LED is placed directly on the metallic lead, and then the other embodiment where the LED is placed on the combination of the transparent plate and the leads. And the particular embodiments that are claimed in the region's patents that are on appeal is this combination of the metallic leads with the transparent plate. There are no examples in the specification where the transparent plate alone provides the structural support to the LED package. But in those embodiments, whenever the specification is talking about the leads, the most the patent says is that the LED is attached to, or wire bonded to the leads of the lead frame. It never, the specification never talks about how the leads are also providing some kind of indirect support to the chip. There is one example where the specification teaches that the lead frame, quote, supports the LED and the transparent plate in the lead frame. But I think when you look at the figures themselves. What portion of the patent says that? So that is at the 789 patent at column 12, lines 58 through 59. I believe there's also support for that at column 12. I'm sorry. Sorry. And then the 916 patent. I'm sorry, you're going too fast. I'm sorry. Column 12, 58, 59? Yes. In figure 21A, lead frame 2108 is used where the LED is placed on a transparent plate 2120. Such as glass quartz, sapphire, diamond, et cetera. Then I believe the other references. Yeah, and then I'm, before you move on, how is it that this section of column 12 helps you? I mean, this sentence to me at the moment reinforces the idea that it's the transparent plate of the lead frame that is providing the support to the LED chip. You think when you look at the figure 21A in combination with this teaching, it supports that the lead frame as a whole. And when you look at figure 21B, figure 21B shows the top view of the lead frame 2108. And in figure 21B, you see that it references the anode and the cathode. And those are the metallic components of the lead frame. And so when you read this portion of the specification in combination with the other portions, as well as the figure, that's where the teaching of support comes from. Another example is in the 9-1-6 pattern in reference to figures 4A and 4B. You have a column and line number? And that is at column 11, lines 35 through 43. And specifically it says, starting at line 40, figure 4B shows that the frame 418 supports the LED at the edges of the glass layer 410, leaving the emitting surface of the glass layer 410 and LED unobstructed. And again, if you look at figure 4B, figure 4B illustrates the lead frame as being the anode and cathode, the metallic portions of the lead frame. Does this figure have a transparent plate? Figure 4B is an illustration of- 4A. Oh, sorry, figure 4A does have a transparent plate. It's the glass layer, which is, wait. I don't think it does. You are correct. Figure 8A of the 9-1-6 pattern is the example where it also includes that. Okay, so maybe for lead frames that do not include a transparent plate, maybe that type of lead frame, perhaps the leads are providing some support to the chip. But lead frames with a transparent plate, there's nothing in these patents that demands that the leads themselves are providing some kind of support, at least not in the written descriptions themselves. I understand you have this argument about how to look at the figures and interpret the figures as suggesting that because the leads are underneath, in part, the transparent plate, then therefore we should think of the leads as likewise somehow indirectly supporting the chip. But at the moment, there's nothing in the claims that requires this kind of reading for lead frame. And the written descriptions themselves, I don't see anything providing that sort of thinking either. I understand your perspective. I think that when you consider the testimony from both experts in combination with the teachings and the specification and the language that's used in the claims, a person of skill in the art would understand that the claimed lead frames are a support structure formed by the leads themselves. And in the specific example in these claims, the support is indirect support. And that's because it's the leads that provide the framework for the entire package when it's connected outside of the LED. That's consistent with the use of lead frame in the prior art. For example, the specification describes figures one and two as being the lead type LED packages, whereas figure three is the chip on board type package. And that's similar to the teachings of the Shimizu reference that the board relied on. If we were to agree with the board's construction of lead frame and necessarily reject Regence's proposed construction, then as I understand it, we could affirm all of the Miyahara-based rejections because right now your argument against the Miyahara rejections is based solely on the claim construction. And so therefore we wouldn't even need to get to the Okamoto-based rejections because there would be nothing left after the Miyahara rejections are affirmed. I believe that's correct. Okay. Do you want to save your remaining time for rebuttal? Yes, Your Honor. Mr. Brown. Good morning, Your Honors. May it please the court. I think what I've heard so far summarizes well what our position is. Regence's primary argument against these references is based on a claim construction that turns on testimony about how a person of ordinary skill in the art would understand the term lead frame. That factual question was resolved against the Regence by the board and it has no support in the specification of the patent. How is that a factual question? How a person of ordinary skill in the art would understand the term lead frame. Yes, that sounds like the word claim construction, right? So certainly the claim construction is a legal issue. But if we're talking about the witness's opinions expressed to the board about how they themselves understand the term, there was testimony from both sides experts on that issue and that issue was weighed and resolved by the board. Does the board expressly rely or make credibility findings or something like that with regard to the witness testimony? Yes, the board did so with respect to Dr. Schubert. I can find you that, just a minute. So on APX beginning at 57, I'm sorry, beginning at 58 and going to 59, the board found that we do not find Dr. Schubert's conclusion persuasive. That's at the top of APX 59. So the board did weigh the testimony about what lead frame meant. And in particular whether on the central issue of whether the leads are required to provide support to the LED chip, that was the conclusion that the board rejected at the top of APX 59. What's your point about all of this given that claim construction here, you know, we have to look at the intrinsic evidence first. Absolutely, Your Honor, and I think that's probably the more important point. So the more important point is in every embodiment in the patent with a transparent plate, the LED is mounted on the transparent plate. The transparent plate is then connected to the lead frame or the leads, and those leads lead outside the package. And that is exactly the same structure that is disclosed in the Okamoto reference where the chip is mounted on the glass plate, the plate is soldered to electrical leads, the entire thing in both the prior reference Okamoto and in the patent is encased in an epoxy. Regents expert admitted that you could pick up the Okamoto package by the metal leads, like you could pick up a popsicle by the stick. The same configuration that is shown in the patents. The board found, based on that, and based on the figure eight of the Okamoto reference which shows the package, the LED package being held in a vertical configuration by the lead frame eight. So if you look at the support for the board's finding, there is Okamoto discloses that it has a, do you have, I'm sorry. I'm just, I don't know why we're talking about Okamoto right now. We spent the entire appellant's argument talking about claim construction and agreement with the appellant that if we affirm the claim construction, the Miyahara rejections are good enough without having to get through a knife fight on every little aspect of the various Okamoto-based rejections. That's fine, Your Honor. I'm happy to do it that way. I think both provide a basis for affirmance. And I agree with you because there was no argument on appeal other than claim construction about Miyahara. It is sufficient to solely focus on claim construction and reject Regent's argument on claim construction. Just to be sure I understand it. So the Miyahara-based rejections apply to every single claim at issue. Is that correct or not? I believe that's correct. I have not verified that today. So I'm operating on memory. I have to check the record. I believe that's correct. On claim construction, turning back to that issue, I think we heard earlier that figure four, which they relied on, does not include a transparent plate. So I agree that in that place where the leads are directly connected to the chip, leads are supporting the chip. In all the other embodiments, the leads are attached to the plate and the plate is attached to the chip. And that configuration is the same configuration that's actually shown in both of the prior art references. Both Miyahara and Okamoto have a chip on a plate and a plate attached to leads and the leads provide the electrical connection. So regardless of what reference you look at, the prior art shows the same configuration that is shown in the patents. And thus, there's substantial evidence to support the board's findings. I was going to continue, if you would like, on Okamoto, but I understand from your question earlier, you don't want me to get into Okamoto. Is that fair, Your Honor? That's just me. I don't know. Okay. Well, I will continue on Okamoto with the remainder of my time in case there are questions on it. You do realize that, and perhaps you don't, that as the appellee, when you decide to open the door and address an issue that wasn't addressed in the opening argument, you now allow the opening person to say whatever they want on rebuttal with that argument. If you just sat down, Yes, Your Honor, I will sit down. Then she wouldn't get to address that argument. I will sit down. Good plan. Thank you, Your Honors. I have confirmed that if you decide on Miyahara that it would apply to all claims and you don't need to get to the Okamoto-based grounds. But I want to return to lead frame. The board asked about credibility determination, and the board did find that Dr. Schubert's testimony was not credible on the lead frame issue. However, the board ignored the testimony of Dr. Dupuis, SACCO's expert, in which he testified that the lead in the claim lead frame needs to provide support to the LED package. And that is at, for example, with the 789 patent at APX 732 through 733. And there, Dr. Dupuis testified that the lead frame includes the metallic conductive structure, and that it's that structure that provides the support to the LED. And that is testimony that the board did not address in its final written decision, and I think that's relevant to a person of skill in the arts understanding of a lead frame. And it's consistent with the specification, and it's consistent with the claim language itself. With respect to Okamoto, for the reasons we stated in the brief, we believe that the Okamoto reference is actually quite different than what's described in the region's patents. The leads in Okamoto do not actually structurally support the LED package. Instead, it's the transparent plate itself that provides the structural support. And I think the board mischaracterized the support that needs to be provided by the lead frame structure when it made its findings about Okamoto providing support. It needs to be a structural support, the framework of the lead frame. It can't just be providing some support. It needs to be a support that is akin to the support that a frame would provide. That's the plain meaning of the claim, and that's consistent with each of the embodiments that are described in the region's patents, and it's consistent with the testimony of both parties' experts in this proceeding. And so, for those reasons, we think that the board erred in construing lead frame too broadly, and that its findings with respect to each of the prior art references, Mihara, Okamura, and the combination of Okamura and Shimizu, is in error. Okay, I thank both counsel. This case is taken under submission. Thank you.